# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TANAE JACKSON** | * | **CIVIL NO.: 2:23-cv-905** |
| | * | |
| **PLAINTIFF** | * | **JUDGE:** |
| | * | |
| **VERSUS** | * | **MAGISTRATE JUDGE:** |
| | * | |
| | * | |
| **BURGER KING CORP., XYZ** | * | **JURY TRIAL REQUESTED** |
| **INSURANCE COMPANY, TRAVELERS** | * | |
| **INS. CO., GPS HOSPITALITY** | * | |
| **PARTNERS, FCCI INSURANCE** | * | |
| **GROUP, INNOVATIVE BUILDING** | * | |
| **SOLUTIONS, LLC-SOUTHEAST** | * | |
| | * | |
| **DEFENDANTS** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF REMOVAL

TO: The Honorable Judges
of the United States District Court
for the Eastern District of Louisiana

Defendants, Innovative Building Solutions, LLC-Southeast and FCCI Insurance Company, erroneously identified as, "FCCI Insurance Group" (collectively "Defendants"), through undersigned counsel and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereby file this Notice of Removal of the action entitled "*Tanae Jackson v. Burger King Corporation, et al.*," Docket No. 2022-04973, Division L, Section "6" on the docket of the Civil District District Court for the Parish of Orleans, State of Louisiana. In support of this Notice of Removal, defendants respectfully represent the following:

## I.   INTRODUCTION

1.   On June 3, 2022, Plaintiff Tanae Jackson filed the attached Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana, entitled *"Tanae Jackson v. Burger King Corporation, et al.,"* Docket No. 2022-04973, Division "L-6." [1]

2.   The Petition asserted personal injury claims against several defendants.  As of the date of this filing, no affidavits of long-arm service have been filed with Orleans Parish Clerk of Court's office.

3.   Innovative Buildings Solutions, LLC-Southeast was served with the Petition and Citation on September 15, 2022.[2] FCCI Insurance Company was served with the Petition and Citation on August 2, 2022.[3]

4.   Plaintiff dismissed the other named defendants, Burger King Corporation, GPS Hospitality Partners IV, LLC (erroneously named "GPS Hospitality Partners") on June 30, 2022, [4] and The Travelers Indemnity Company (erroneously named "Travelers Insurance Company") on August 10, 2022. [5]

5.   Plaintiff alleges in the Petition that she was involved in an accident while in the course and scope of her employment with dismissed defendant, Burger King (Store #295), located at 2423 South Carrollton Avenue, New Orleans, Louisiana, on June 5, 2021.  Plaintiff's Petition asserts that she sustained physical injuries to her shoulder, head, vision problems, and possibly a neck injury, from a fallen metal beam that Innovative Building Solutions, LLC-Southeast was installing

---

[1] Exhibit A, Petition for Damages
[2] Exhibit B, Citation and Petition Re Innovative Building.
[3] Exhibit C, Citation and Petition Re FCCI Insurance Company.
[4] Order of dismissal, Exhibit "D."
[5] Order of dismissal, Exhibit "E."

while performing construction and renovation work at the Burger King.[6] The Petition further asserts that Plaintiff sustained personal injuries to her shoulder, head, arm pain, bruising, blurred vision, radiculopathy, neurological injuries, and emotional and/or psychological injuries."[7]

6. In her Petition, Plaintiff made only generic damage claims, including physical and mental pain and suffering from those injuries (past, present, and future), loss of enjoyment of life (past, present, and future), medical expenses (past, present, and future), physical disability and impairment (past, present, and future), loss of wages (past, present, and future), and impairment of earning capacity.[8] Plaintiff did not indicate any dollar amount or alleged amount in controversy in the Petition for Damages.[9]

7. By filing this pleading, Defendants do not admit the underlying facts as alleged by Plaintiff or as summarized above.

## II. THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. § 1332

8. This action is removed on the grounds of diversity jurisdiction pursuant to 28 U.S.C. §§1332 and 1441(a) and is removed well within one year after commencement of the action pursuant to 28 U.S.C. §1446(b)(3).

9. 28 U.S.C. § 1332(a) provides that federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states. . ."

10. This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C § 1332(a) and removable to this Court pursuant to 28 U.S.C. § 1441(a) because (1) there is complete

---

[6] Exhibit A - Petition at ¶¶ 5-9.
[7] *Id.* at ¶ 10
[8] *Id.* at ¶¶ 23 and Prayer for Relief.
[9] *Id.*

3

diversity of citizenship between Plaintiff and all Defendants; and (2) the amount-in-controversy exceeds $ 75,000, exclusive of interest and costs.

### A. THERE IS COMPLETE DIVERSITY OF CITIZENSHIP

11.  Plaintiff alleges in her Petition that she resides in Orleans Parish, State of Louisiana.[10]

12.  Defendant Innovative Building Solutions, LLC-Southeast is a limited liability company organized under the laws of Alabama with its principal place of business in Alabama. The sole member of Innovative Building Solutions, LLC-Southeast is Richard Bass, managing member, who is a resident of Daphne, Alabama. Therefore, Innovative Building Solutions, LLC-Southeast is considered a citizen of Alabama.

13.  In accordance with 28 U.S.C. § 1332(c)(1)(A), Defendant FCCI Insurance Company takes on the citizenship of its insured, Innovative Building Solutions, LLC-Southeast, for the purposes of determining diversity in a direct-action lawsuit. Furthermore, FCCI Insurance Company is incorporated in Florida with its principal place of business in Florida. Therefore, FCCI Insurance Company is considered a citizen of Florida and Alabama for purposes of diversity and is diverse from the Louisiana plaintiff.

14.  Plaintiff has dismissed the other named defendants, Burger King Corporation, GPS Hospitality Partners IV, LLC (erroneously names "GPS Hospitality Partners") on June 30, 2022,[11] and The Travelers Indemnity Company (erroneously named "Travelers Insurance Company") on August 10, 2022.[12]

15.  Accordingly, there is complete diversity of citizenship between the Plaintiff and all remaining defendants.

---

[10] Exhibit A - Petition, Introductory Paragraph.
[11] Order of dismissal, Exhibit "D."
[12] Order of dismissal, Exhibit "E."

### B. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.00

16. Plaintiff neither pled a monetary sum for damages nor did she allege that her damages exceed the requisite amount for federal jurisdiction pursuant to 28 U.S.C. § 1332.

17. While Plaintiff did not specify the amount of damages sought in the Petition, during her deposition on February 9, 2023, it became apparent for the first time that the amount in controversy in this case exceeds $75,000.00 exclusive of interest and costs.

18. The U.S. Fifth Circuit Court of Appeal has explained that for purposes of establishing removal jurisdiction, a defendant may demonstrate that the amount in controversy exceeds $75,000.00, in either of two ways: (1) by demonstrating that it is 'facially apparent' from the Petition that Plaintiff's claim likely exceeds $75,000.00 or (2) 'by setting forth *the facts* in controversy-preferably in the removal petition, but sometimes by affidavit that supports a finding of the requisite amount.'"[13] Moreover, where the amount of damages is ambiguous, the removing defendant is required to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.[14] This burden may be satisfied by the removing defendant showing that it is facially apparent that the plaintiff's claim exceeds the jurisdictional amount or by setting forth facts and disputes supporting a finding that the jurisdictional amount is satisfied.[15] *See Allen,* 63 F.3d at 1335.

19. In the Petition, other than alleging personal injuries, Plaintiff fails to provide any information on the value of the damages asserted.

---

[13] *Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 868 (5th Cir. 2002) (emphasis in original) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995).
[14] *See Simon v. Wal-Mart Stores,* 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th 1995).
[15] See *Allen*, 63 F.3d at 1335.

20.     After the lawsuit was filed, Defendants initiated written discovery to Plaintiff in an effort to ascertain the value of the claims, including Requests for Admission, Interrogatories and Requests for Production of Documents. Defendants specifically asked Plaintiff about the amount in controversy in the Interrogatories and Requests for Admission. However, Plaintiff objected to these inquiries as premature and failed to provide a substantive response.[16]

21.     While Plaintiff refused to provide a clarification of the amount in controversy, she did provide defendants with medical records reflecting treatment for her claimed injuries through her attorney of record on December 7, 2022. The medical records show that Plaintiff received treatment from the following medical providers and facilities: Baptist Community Health Services, Tulane Medical Center, Ochsner Health Center, and Dr. Morteza Shamsnia (Shamsnia Neurology).[17] However, it was not apparent from these records the full extent of her diagnoses or anticipated treatment, sufficient to clarify that the amount in controversy requirement for federal court diversity jurisdiction would be met.

23.     However, during plaintiff's February 9, 2023 deposition, she testified that the accident at Burger King resulted in the following injuries: 1) injury to her left shoulder with radiating pain and tingling to her fingers; 2) injury to her head, resulting in headaches and vision problems; 3) injury to her neck, also with radiating pain; 4) possible neurologic impairment; and 4) emotional pain and suffering.[18] Plaintiff provided the following relevant testimony concerning her injuries:

> Q.      So what are the symptoms that you believe are preventing you from working?
>
> A.      My shoulder pain. Sometimes it's tingling from the shoulder all the way down to the fingertips and then sometimes I have muscle spasms that go all the way through my fingers, my pinkie, my ring finger, basically all of my fingers. . . [s]ometimes

---

[16] Exhibit "F," (*in globo*) Plaintiff's Responses to Defendants' Interrogatories, Requests for Production of Documents, and Requests for Admissions.
[17] Medical records received in discovery, *in globo* Exhibit "G."
[18] Deposition of Plaintiff Tanae Jackson, p. 28, lines 3-24; p. 49, lines 1-5; p. 55, lines 4-11; p. 58, lines 20-25, p. 95, lines 6-22, Exhibit "H."

[the pain] gets worse. Like sometimes it takes me off guard. Like the pain will be from probably a five all the way to a ten.[19]

\* \* \*

Q. "Any other body parts injured in the accident?

A. My head.

Q. Tell me how you head was injured.

A. When the beam fell, it hit my head and my shoulder.

\* \* \*

Q. And what symptoms did you experience after the accident to your head?

A. I was - - during the accident, like as soon as it happened, I was a little dizzy. I was like kind of knocked off balance, but like I was still, like, standing up. I was conscious of what was going on. But that was it.[20]

\* \* \*

Q. Any what experience have you - - symptoms have you experienced with your vision since the accident?

A. Well, my left eye is, like, I can't see as clearly out of it as the right and when I - - I think it was the day after the accident, I told my mom about it . . . [w]e went to the hospital . . . and then we seen the eye doctor and he explained the vision in your left eye is not as clear as it is in the right eye."[21]

Q. I looked at the records and at one point, do you recall him [Dr. Shamsnia] tell you, maybe you need to get a brain MRI?

A. Yes.

\* \* \*

Q. Is that because he wants to look at, if you know, the cause of the tingling sensation down your arm or is that for another reason? Do you know why he wants to do that?

A. I'm not sure. He was talking about the injury to the head, because he feels like I may have neck damage that's causing it to the shoulder . . . [h]e wants, like, to

---

[19] Exhibit "H," p. 28, lines 13-20 through p. 29, line 23
[20] Exhibit "H," p. 48, lines 1-19; p. 49, lines 1-5.
[21] Exhibit "H," p. 61, lines 9-20.

> examine my head to make sure nothing is wrong with the head and he was also saying I may have suffered a concussion and didn't know it. So he just wants to see what's going on.[22]

* * *

> Q. As we sit here today, has any doctor that you have seen recommended surgery for your shoulder?
>
> A. My neurologist, he was talking about having surgery. I may have to have surgery, is what he was saying, but that's about it.[23]

24. Defendants learned for the first time during Plaintiff's February 9, 2023 deposition that she received physical therapy treatment at Ochsner St. Bernard Multispecialty Clinic in Chalmette, Louisiana.[24] Defendants have requested a copy of Plaintiff's physical therapy records.

25. The attending emergency room physician at Tulane Medical Center recommended a CT scan of Plaintiff's head and orbits and referred her to the ophthalmology clinic.[25] Plaintiff testified during her deposition that her eye doctor told her she needs an MRI to diagnose her post-accident vision problems.[26]

26. Plaintiff disclosed for the first time during her February 9, 2023 deposition that Dr. Shamsnia recommended that she undergo a brain MRI to diagnose her headaches, tingling sensation in her arms, and vision problems, which Plaintiff scheduled to take place on February 22, 2023.[27]

27. It was during Plaintiff's deposition that Defendants for the first time understood the full extent of Plaintiff's past and proposed future treatment, and her alleged injuries, and became aware that the amount in controversy in fact exceeds $75,000.

---

[22] Exhibit "H," p. 94, line 16 through p. 95, line 18.
[23] Exhibit "H," p. 9-14.
[24] Exhibit "H," p. 88, line 22 through p. 89, line 4
[25] Exhibit "G," Tulane Medical Center, June 7, 2021 date of service.
[26] Exhibit "H," p. 62, line 10 through p. 63, line 2.
[27] Exhibit "H," p. 94, line 16 through p. 95, line 24.

28. It is well established in Louisiana law that general damage awards for cervical disc injuries requiring treatment and pain-relieving procedures may exceed $75,000. *See Varnado v. Pennsylvania Manufacturers Assoc. Ins.,* No. 820903, 24th Judicial District Court for the Parish of Jefferson (jury awards $216,000 in general damages to a motorist who sustained a C4-5 cervical disc injury and T9-10 thoracic disc injury that may require future installment of a spinal stimulator); *See also Duchamp v. State Farm,* 916 So.2d 498 (La.App. 3 Cir. 2005) (jury awards $135,000 in general damages to a motorist who sustained a herniated cervical disc following a rear-end accident and underwent medical treatment that included physical therapy, chiropractic care, and cervical injections); *Hebert v. Boesch,* 2015-1791 (La.App. 1 Cir. 2016), 194 So.3d 798 (jury awards $75,000 to motorist who sustained C6-7 disc bulge with cervical radiculopathy with conservative treatment and sporadic flare-ups possible in the future).

29. If Plaintiff undergoes surgery to her shoulder, general damage awards vary in the $60,000-$75,000 range. *See Elkins v. Geico,* No. 3:18-cv-01035 (M.D.LA 2021) (Judge deGravelles awards general damages of $60,000 to plaintiff for a torn labrum surgery); *Saucier v. State Farm Mut. Auto. Ins. Co.,* No. 14-3157 (W.D.La 2017) (district court judge awards general damages of $75,000 to a plaintiff who has physical therapy followed by surgery for a torn labrum and torn rotator cuff); *Maddox v. Bailey,* 146 So.3d 590 (La.App. 1 Cir. 2014) ($70,000 general damage award to plaintiff who underwent a shoulder injection and arthroscopic surgery for a torn labrum).

30. Finally, as noted above, Plaintiff was scheduled to undergo a brain MRI on February 22, 2023 to diagnose the cause of her headaches and vision problems. Plaintiff's medical providers have recommended a CT scan of her head and orbits to diagnose these issues as well. In addition, Plaintiff's medical providers recommended a cervical spine MRI to evaluate and diagnose her cervical radiculopathies and her bilateral ulnar neuropathies.

31.   In addition to the foregoing general damage awards, Plaintiff is asserting a claim for lost wages.[28] During Plaintiff's deposition, she testified that she earned $8.25 per hour at the time of the accident and worked 32-hours weekly on average.[29] Plaintiff further testified that she has not worked since the date of the accident due to the alleged injuries she sustained.[30] From the date of the accident on June 5, 2021, through the date of filing of the present Notice of Removal, ninety-two (92) weeks have passed, resulting in a lost wage claim totaling $24,288.00 and continuing.

32.   The damages awards cited above do not include any other form of recoverable damages, including damages for impairment of earning capacity, medical expenses, drug/prescription medication, rehabilitative therapy, diagnostic procedures, travel and other related and necessary expenses,.

33.   Absent a statute limiting recovery, "(l)itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints," stating that the damages are not more than the minimum jurisdictional amount.[31] "The general principle is that plaintiffs have to show that they are bound irrevocably by their state pleadings."[32] *Id.* at 1412, n.10.  No binding stipulation or affidavit was filed with Plaintiff's Petition.

34.   Based on the injuries allegedly sustained, medical expenses incurred, lost wages, and continuing evaluation and treatment for pain to Plaintiff's shoulder, head, and bilateral arms, and treatment for headaches, vision problems, cervical radiculopathies, and bilateral ulnar neuropathies across her elbows, it is clear that Plaintiff's potential damages exceed the jurisdictional minimum of $75,000.00 under 28 U.S.C. § 1332(a).

---

[28] Exhibit "H," p. 37, line 6 through p. 38, line 23.
[29] Exhibit "H," p. 21, line 21 through p. 22, line 22.
[30] Exhibit "H," p. 22, line 23 through p. 23, line 17.
[31] *DeAguilar v. Boeing Co.,* 47 F.3d 1404, 1412 (5th Cir 1995) [quoting *In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir. 1992)].
[32] *Id.* at 1412, n. 10.

35. Plaintiff has not sought to limit her damages in any way. While Defendants do not admit liability or causation for any element of damages, Defendants have met their burden of showing that the amount in controversy exceeds the jurisdictional amount required for removal pursuant to 28 U.S.C. §§ 1332 and 1441. For the foregoing reasons, Defendants submit that the amount in controversy reasonably exceeds $75,000.00, and this Honorable Court is vested with subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332.

### III. THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED.

36. A copy of the Petition is attached hereto as Exhibit A, and this Notice of Removal is being served upon all known counsel of record. A copy of the Notice to the Clerk of Court for the Civil District Court for the Parish of Orleans, State of Louisiana.[33]

37. The Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and Uniform Local Rules of the District Courts.

38. Jurisdiction is founded on the existence of diversity jurisdiction under 28 U.S.C. § 1332, which grants federal courts concurrent original jurisdiction over claims where the matter in controversy exceeds the sum or value of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), exclusive of interest and costs, and is between citizens of different States.

39. This matter is being removed from the Civil District Court for the Parish of Orleans, State of Louisiana, which is located within the Eastern District of Louisiana pursuant to 28 U.S.C. § 98(a). Therefore, venue is proper in accordance with 28 U.S.C. § 1441(a) because it is the "district and division embracing the place where such action is pending."

---

[33] Exhibit "I", State Court Notice of Removal.

40. This Notice of Removal is being filed within thirty (30) days after receipt by Defendants of Plaintiff's deposition transcript on February 23, 2023, for the February 9, 2023 deposition, and is, therefore, timely under 28 U.S.C, § 1446 (b).

## IV. <u>JURY TRIAL REQUEST</u>

41. Defendants, Innovative Building Solutions, LLC-Southeast and FCCI Insurance Company, are entitled to and respectfully request a trial by jury on all issues.

**WHEREFORE**, removing defendants, Innovative Building Solutions, LLC-Southeast and FCCI Insurance Company pray that the above action now pending in the Civil District Court for the Parish of Orleans, State of Louisiana, be removed therefrom to this Honorable Court.

Respectfully submitted,

*/s/ Reed S. Minkin*
**LANCE B. WILLIAMS, T.A.** (Bar No. 23373)
**REED S. MINKIN** (Bar No. 28687)
McCRANIE, SISTRUNK, ANZELMO,
HARDY, MCDANIEL & WELCH
195 Greenbriar Boulevard, Suite 200
Covington, Louisiana 70433
Telephone: (504) 831-0946
Facsimile: (800) 977-8810
Email: mrs@mcsalaw.com
Email: rsm@mcsalaw.com
E-Mail for Service: lbw@mcsalaw.com;
rsm@mcsalaw.com; vaw@mcsalaw.com;
emh@mcsalaw.com
**ATTORNEYS FOR INNOVATIVE BUILDING SOLUTIONS, LLC-SOUTHEAST AND FCCI INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been filed electronically with the Clerk of Court using the CM/ECF system. A copy of the above and foregoing Notice of Removal has been served upon all known counsel of record by facsimile or email, and/or by placing same in the United States mail, postage prepaid and properly addressed, this 10th day of March 2023.

*/s/ Reed S. Minkin*
REED S. MINKIN